KRUPP INTERNATIONAL, INC., a Delaware corporation, Plaintiff,

v.

YARN INDUSTRIES, INC., a foreign corporation, Defendant and Counterclaimant,

v.

KRUPP INTERNATIONAL, INC., a Delaware corporation, Counterclaim Defendant and Counterclaim Third-Party Plaintiff,

v.

PLATT SACO LOWELL CORPORATION, Counterclaim Third-Party Defendant.

FRIED KRUPP, GMBH, Plaintiff,

v.

PLATT SACO LOWELL CORPORATION, Defendant.

Civ. A. Nos. 83–357 LON, 83–430 LON.

United States District Court, D. Delaware.

Aug. 14, 1985.

Charles Gruver, III, of Bayard, Handelman & Murdoch, Wilmington, Del. (Peter Kurshan, [argued] of Herzfeld & Rubin, New York City, of counsel), for plaintiff, counterclaim defendant and counterclaim third-party plaintiff Krupp Intern., Inc.

James J. Woods, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, Del., for defendant and counterclaimant Yarn Industries, Inc.

Edmund N. Carpenter, II, Thomas A. Beck, of Richards, Layton & Finger, Wilmington, Del. (Mark R. Holmes, Greenville, S.C. [argued], and Wesley M. Walker, of Leatherwood, Walker, Todd & Mann, Greenville, S.C., of counsel), for third-party defendant Platt Saco Lowell Corp.

## OPINION

LONGOBARDI, District Judge.

The Plaintiff, Krupp International, Inc. ("Krupp"), brought this action to compel Yarn Industries, Inc. ("Yarn") to pay certain amounts due under a contract for sale of a yarn manufacturing system. Yarn has denied liability and has counterclaimed against Krupp seeking compensation for losses incurred due to the failure of the yarn manufacturing equipment to operate properly. Krupp has impleaded Platt Saco Lowell Corporation ("Platt Saco") as a third-party Defendant on the counterclaim. Currently before the Court is a motion by Platt Saco to dismiss Krupp's claims against it or, alternatively, to transfer this action to the United States District Court for the District of South Carolina.

## BACKGROUND

On August 16, 1978, Krupp and Yarn entered into a contract under which Krupp agreed to sell Yarn certain manufacturing equipment to be installed in a plant being erected by Yarn. Yarn paid Krupp 50% of the purchase price as a down payment. The agreement provided that Yarn would pay the balance by December 31, 1978, and that Krupp would deliver the equipment by the same date. Krupp and Yarn subsequently agreed to extend the time for delivery and final payment to March, 1979.

Under the contract, Krupp was obligated to install the yarn manufacturing equipment. In January, 1979, however, the assets of Krupp's Textile Manufacturing Division ("TMD") were sold to Hergeth, Inc.,

a predecessor of Platt Saco,[1] and virtually all of the division's employees became Hergeth employees. As a result of the sale and transfer of employees, Hergeth undertook to install the equipment.

Installation was completed in December, 1979. Yarn was dissatisfied with the operation of the system and complained to Krupp. After efforts to resolve the complaints proved unavailing, Yarn notified Krupp on July 16, 1981, that it revoked any acceptance of the system and demanded a refund of the purchase price. Krupp has refused to take back the system or refund the purchase price.

Although the dispute is based on a straightforward breach of contract claim, its procedural history is complex and has involved decisions by three federal district courts and two courts of appeals. In late October, 1981, Yarn notified Krupp that it intended to sue Krupp in South Carolina. At Krupp's request, Yarn sent Krupp a copy of the complaint it intended to file. On November 13, 1981, Krupp filed suit against Yarn in the United States District Court for the Southern District of New York. Upon receiving notice of Krupp's suit in New York, Yarn brought suit against Krupp in the United States District Court for the District of South Carolina.

The New York court dismissed Krupp's action on the grounds that venue was improper in New York. This dismissal was affirmed by the Second Circuit. *Krupp Intern., Inc. v. Yarn Industries, Inc.,* 714 F.2d 114 (2d Cir.1982). Subsequently, on June 10, 1983, Krupp filed this action in Delaware.

Krupp's complaint contains three counts. The first count seeks additional payment allegedly due as the result of an oral modification of the yarn equipment contract. The second count seeks interest due as the result of a delay in payment by Yarn. The third count seeks a declaratory judgment that Krupp fully performed its agreement with Yarn.

Yarn moved this Court to transfer the Delaware action to South Carolina while Krupp moved the South Carolina court to dismiss that action. The district court in South Carolina ruled that Yarn was collaterally estopped from maintaining the South Carolina action by the decision of the New York court. The South Carolina court's decision was based on a choice of forum clause contained in the contract between Krupp and Yarn. This clause provides that the forum for resolving disputes between the parties would be, at Krupp's option, either Essen or Bremmen, or "the Court having jurisdiction for the domicile of [Krupp's] agent or for the domicile of the purchaser." The New York court interpreted "domicile" to mean the places of incorporation of Krupp and Yarn, which are Delaware and South Carolina respectively. The New York court accordingly held that venue was improper in New York. The South Carolina court interpreted the New York decision to mean that the New York court had upheld the validity and enforceability of the choice of forum clause which empowers Krupp to choose either Delaware or South Carolina at its sole option. The court held that Yarn was collaterally estopped from relitigating the validity of the clause or from disputing Krupp's choice of forum in Delaware. The district court therefore dismissed the South Carolina action.

In ruling on Yarn's motion to transfer this action from Delaware to South Carolina, Judge Stapleton agreed with the South Carolina district court that Yarn was collaterally estopped from relitigating the validity or enforceability of the choice of forum clause. Citing *Plum Tree, Inc. v. Stockment,* 488 F.2d 754 (3d Cir.1973), however, he held that the choice of forum clause was not, by itself, dispositive of Yarn's motion to transfer. Rather, the choice of forum clause only eliminated Yarn's convenience as a factor in ruling on the motion to transfer. If other factors,

---

**1.** In June, 1983, Platt Saco merged with Hergeth, with Platt Saco as the surviving corpora- tion.

such as the convenience or availability of third-party witnesses, weighed in favor of South Carolina, the action could still be transferred there. Judge Stapleton went on to hold that under the circumstances at that time, the considerations favoring South Carolina as a forum were not sufficient to justify transfer. He explicitly left open the possibility that changes in circumstances might justify transfer at a later date.

Subsequently, the Fourth Circuit reversed the South Carolina district court's ruling on the collateral estoppel effect of the New York decision. *Yarn Industries v. Krupp Intern., Inc.*, 736 F.2d 125 (4th Cir.1984). The Fourth Circuit held that the New York court did not have to rule on the validity of the choice of forum clause. Under the general venue statute, a diversity action may be brought only in the judicial district where all plaintiffs reside or all defendants reside or in the district in which the claim arose. The "residence" of a corporation for venue purposes is its state of incorporation. Thus, in the absence of the choice of forum clause, venue would only be proper in Delaware or South Carolina. The New York court then went on to construe the choice of forum clause to allow venue only in Delaware or South Carolina. The Fourth Circuit held that the New York court had no reason to consider the validity or enforceability of the choice of forum clause since, whether it was valid or not, venue was improper in New York. Thus Yarn was not collaterally estopped from litigating the validity of the choice of forum clause because that issue had not been decided by the New York court.

The Fourth Circuit went on to hold that the South Carolina court should have taken evidence on Yarn's claim that the choice of forum clause was superseded by another clause in the contract, a choice of law clause which specifies that "[t]his agreement is subject to South Carolina law." Although this choice of law clause makes no reference to choice of forum, affidavits were submitted by both Krupp and Yarn which stated that the parties to the negotiations, all non-lawyers, understood the clause to mean that all disputes would be resolved in South Carolina courts. The South Carolina district court excluded these affidavits as violating the parol evidence rule. The Fourth Circuit reversed on this issue also and remanded the case to the district court for a determination of the intent of the parties in inserting the choice of law clause and for a determination of the validity of the choice of forum clause. These issues are currently pending before the district court in South Carolina.

Along with its motion to transfer this action from Delaware, Yarn filed a counterclaim against Krupp seeking compensation for losses due to the failure of the system to operate properly and refund of the purchase price. In June, 1984, Krupp impleaded Platt Saco as a third-party Defendant to Yarn's counterclaim contending that any damages suffered by Yarn are due to the wrongdoing of Platt Saco's predecessor, Hergeth, in failing to install and maintain the equipment properly and failing to properly train and supervise Yarn's employees. Platt Saco has moved to transfer or dismiss Krupp's claims against it.

## MOTION TO TRANSFER

Title 28, section 1404(a) of the United States Code allows the Court to transfer a lawsuit to any other district where it might have been brought if the transfer provides greater convenience for the parties and witnesses and serves the interests of justice. It is undisputed that Krupp could have brought this action in South Carolina.

 In ruling on a motion to transfer, Plaintiff's choice of forum is a "paramount consideration" and the moving party has the burden of demonstrating that a balancing of proper interests weighs strongly in favor of transfer. *Shutte v. Armco Steel Corporation*, 431 F.2d 22 (3d Cir. 1970). When, however, the plaintiff has brought suit in a forum which is not its "home turf" and which has no connection with the facts of the lawsuit, the convenience to the plaintiff of litigating in its own choice of forum is not as great. Consequently, it will be easier for the Defendant to show that the balance of convenience favors transfer. *Pall Corp v. Bentley Laboratories, Inc.*, 523 F.Supp. 450, 452

(D.Del.1981); *General Instrument Corp. v. Mostek Corp.,* 417 F.Supp. 821, 822–23 (D.Del.1976); *Burroughs Wellcome Co. v. Giant Food, Inc.,* 392 F.Supp. 761, 763 (D.Del.1975).

In support of its motion to transfer, Platt Saco points out that this action has no connection at all to Delaware other than the fact that Krupp and Platt Saco are incorporated in Delaware. None of the negotiations over the contract took place in Delaware, none of the parties or witnesses reside here, none of the documents are here and none of the equipment was ever delivered here.

In contrast, South Carolina is the most convenient forum for the parties and witnesses. All of the key negotiations concerning the contract took place in South Carolina or Charlotte, North Carolina, which is about ten miles from the South Carolina border. The equipment was delivered and installed in South Carolina and all of the maintenance took place there. All of Platt Saco's and Hergeth's offices, records and employees are in South Carolina. Also, many former employees of Krupp, Hergeth and Yarn live in or near South Carolina. Unlike Yarn, Platt Saco never agreed with Krupp to have disputes settled in Delaware or any other forum outside of South Carolina.

Platt Saco also argues that the interests of justice would best be served by transfer to South Carolina. The contract between Krupp and Yarn explicitly provides that it is governed by South Carolina law. It seems clear that Krupp's claims against Platt Saco, based on the activities of Hergeth, a South Carolina corporation, in maintaining machinery in South Carolina would also be governed by South Carolina law. Platt Saco argues that a federal court in South Carolina would be better able to apply South Carolina law. Further, Platt Saco points to a number of former employees whose attendance in Delaware could not be compelled but who would be within the subpoena power of a South Carolina court.

Platt Saco also attempts to argue that South Carolina is significantly more conve-

nient for Yarn than Delaware. It refers the Court to Yarn's briefs in support of its motion to transfer which was denied by Judge Stapleton. Yarn, on the other hand, has not joined in Platt Saco's motion to transfer and has taken no position on this motion. In addition, Judge Stapleton held that Yarn is collaterally estopped from using its own convenience as a basis for a motion to transfer. Even accepting the Fourth Circuit's position that collateral estoppel is not applicable, the interpretation of the choice of forum clause depends on the results of an evidentiary hearing currently pending before the South Carolina district court. (In view of this Court's resolution of the issues below, it is unnecessary to consider Yarn's convenience as a basis for transfer.)

In response, Krupp argues that Platt Saco, as a third-party Defendant, lacks standing to attempt to transfer this action to South Carolina. Even if Platt Saco has standing to attempt to transfer this case, Krupp contends that Platt Saco has failed to show sufficient additional convenience to warrant transfer. Finally, Krupp contends that any added convenience for Platt Saco is outweighed by additional inconvenience for Krupp's witnesses in New York and Europe.

■ Krupp cites no authority for its contention that a third-party defendant lacks standing to attempt to transfer an action nor is there any basis in the statutory language for such a restriction. The policy considerations for granting a motion to transfer by a party to the original action seem equally applicable to a third-party defendant. The Court accordingly holds that Platt Saco has standing to raise a motion to transfer.

■ In weighing the convenience of the parties, it is clear that South Carolina is significantly more convenient than Delaware for Platt Saco. All of Platt Saco's employees and records are in South Carolina and none are in Delaware. Further, many former employees of the various companies involved in the contract live in or very close to South Carolina. Krupp

contends that this would be offset by added inconvenience for Krupp. However, a number of Krupp's employees with knowledge of the relevant facts are based in Charlotte, North Carolina, the headquarters of Krupp's Textile Machinery Division, or in South Carolina. Affidavits of James L. Law, Docket Item ("D.I.") 58, attachments 1 and 2. South Carolina would be far more convenient than Delaware for these employees. While Krupp claims that some of its employees in New York, its corporate headquarters and, in West Germany, the headquarters of its parent corporation, will be called to testify, it has not identified who these employees are or why their testimony would be useful. Based on the current record, it appears that there would be little, if any, inconvenience to Krupp in a transfer to South Carolina and, in fact, South Carolina may be more convenient. Thus, the convenience of the parties and witnesses weighs strongly in favor of transfer.

Finally, the Court must consider the interests of justice. In denying Yarn's motion to transfer, Judge Stapleton noted that Yarn had identified several former employees who would be called as witnesses and who resided in South Carolina. These witnesses would be within the subpoena power of the district court in South Carolina but not of this court. Judge Stapleton acknowledged that this was a factor to be weighed in considering the interests of justice but held that it was outweighed by the choice of forum clause and the weight to be accorded a plaintiff's choice of forum.

On this motion, Platt Saco has identified additional former employees who would be called to testify and who could be subpoenaed in South Carolina but not in Delaware. Thus, this factor weighs somewhat more heavily in favor of a transfer to South Carolina. Also, Platt Saco never agreed to a choice of forum clause with Krupp. Although a transfer of this action would deprive Krupp of the benefit of its choice of forum agreement with Yarn, this is due to Krupp's own voluntary action in impleading Platt Saco. The Court accordingly finds that the interests of justice favor transfer to South Carolina.

In summary, Krupp brought this action in a forum which has no connection with this lawsuit and which is not its home turf. It has not demonstrated that there would be any significant inconvenience to it if this action were transferred to South Carolina. Platt Saco has demonstrated that the convenience of the parties and witnesses and the interests of justice strongly favor transfer. Its motion to transfer will accordingly be granted.

■ Platt Saco has specified that it would prefer that this action be transferred to the Greenville Division of the District of South Carolina. Yarn's lawsuit, which is now on remand from the Fourth Circuit, is currently pending in the Florence Division of the District of South Carolina. The Court believes it would be preferable to transfer this action to the Florence Division where it could more easily be consolidated with Yarn's action if that court should deem such action appropriate. The Court will accordingly order transfer to the Florence Division. In view of the Court's disposition of Platt Saco's motion to transfer, it is unnecessary to rule on its motion to dismiss.